

## Fourth Court of Appeals
### San Antonio, Texas

### MEMORANDUM OPINION

No. 04-23-00993-CV

**IN THE INTEREST OF M.R.S.** and C.A H., Children

From the 131st Judicial District Court, Bexar County, Texas
Trial Court No. 2022PA00314
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:    Luz Elena D. Chapa, Justice

Sitting:    Luz Elena D. Chapa, Justice
Irene Rios, Justice
Lori I. Valenzuela, Justice

Delivered and Filed: May 7, 2024

AFFIRMED

Appellants A.H. and F.S.[1] appeal the trial court's order terminating their parental rights to

M.R.S. and C.A.H. Both parents challenge the sufficiency of the evidence to support the trial

court's best-interest findings as to the children, and A.H. also challenges the trial court's

termination finding based on subsection (O) as to C.A.H. We affirm.

### BACKGROUND

The Department of Family and Protective Services filed an original petition on February

28, 2022, seeking appointment as the children's temporary managing conservator and termination

of F.S. and A.H.'s parental rights. The case proceeded to a three-day bench trial on July 27, 2023,

---

[1] To protect the identity of the minor children, we refer to appellants and the children by their initials. *See* TEX. FAM. CODE § 109.002(d); TEX. R. APP. P. 9.8.

August 3, 2023, and August 25, 2023, via Zoom, consisting of testimony from six witnesses and five exhibits. During trial, the trial court took judicial notice of an affidavit of relinquishment signed by F.S. After hearing the evidence, it ultimately found the Department established by clear and convincing evidence the grounds for termination of F.S.'s parental rights as to both children pursuant to subsections (K), (O), (P), and (R). *See* TEX. FAM. CODE § 161.001(b)(1)(K), (O), (P), and (R). The trial court also found the Department established by clear and convincing evidence the grounds for termination of A.H.'s parental rights as to his child, C.A.H., pursuant to subsections (O) and (P).[2] *See id.* § 161.001(b)(1)(O) and (P). It further found by clear and convincing evidence terminating A.H. and F.S.'s parental rights was in the children's best interest. *See id.* § 161.001(b)(2). Based on its findings, the trial court appointed the Department the children's permanent managing conservator.

A.H. and F.S timely appealed the trial court's order. On appeal, F.S. challenges the trial court's best-interest finding, and A.H. challenges the trial court's best-interest finding and termination finding based on subsection (O).

## F.S. VOLUNTARILY RELINQUISHED HER PARENTAL RIGHTS

F.S. argues the evidence presented at trial is legally and factually insufficient to support the trial court's finding termination of her parental rights was in her children's best interest.

Texas Family Code section 161.211(c) provides "[a] direct or collateral attack on an order terminating parental rights based on an unrevoked affidavit of relinquishment of parental rights or affidavit of waiver of interest in a child is limited to issues relating to fraud, duress, or coercion in the execution of the affidavit." TEX. FAM. CODE § 161.211(c); *In re D.S.*, 602 S.W.3d 504, 518 (Tex. 2020) ("Under the Family Code, a parent may seek to set aside a termination order secured

---

[2] A.H. is not the father of M.R.S. M.R.S.'s father is unknown. However, the trial court terminated his rights as well, and he is not a party to this appeal.

by a voluntary relinquishment affidavit only on the grounds that the affidavit was procured by fraud, duress, or coercion."). The Texas Supreme Court has explained section 161.211(c) "prohibits post-judgment attacks based on unenumerated grounds, even if the trial court erroneously determined a statutory prerequisite was satisfied." *D.S.*, 602 S.W.3d at 514–15. And where the trial court has found termination based on subsection (K), i.e., that the parent has executed an unrevoked affidavit of relinquishment of parental rights, section 161.211(c) also bars evidentiary sufficiency challenges to the trial court's best-interest finding. *See id.* (citing *In re K.S.L.*, 538 S.W.3d 107, 111–12 (Tex. 2017)) (explaining "[o]nce [the best-interest] finding was made, section 161.211(c) made it conclusive, precluding courts from looking behind the trial court's judgment to determine whether or not the determination was correct").

Here, the termination order was based on clear and convincing evidence of multiple grounds, including subsection (K) due to F.S.'s execution of an irrevocable relinquishment affidavit. Therefore, her sufficiency challenge to the trial court's best interest finding is barred by section 161.211(c). *See id.* As indicated above, section 161.211(c) limits F.S. to challenging the termination order based on "fraud, duress, or coercion in the execution of the affidavit." TEX. FAM. CODE § 161.211(c); *see D.S.*, 602 S.W.3d at 518. Because she does not raise any such challenge, we therefore have nothing before us to consider.[3] *See* TEX. FAM. CODE § 161.211(c); *D.S.*, 602 S.W.3d at 518; *In re D.A.*, No. 02-22-00260-CV, 2022 WL 17841133, at *6 n.10 (Tex. App.—Fort Worth Dec. 22, 2022, pet. denied) (mem. op.) (concluding appellant's appeal right foreclosed by statute where trial court terminated appellant's parental rights based on his execution of irrevocable relinquishment affidavit and child's best interest, and appellant did not raise fraud, duress, or coercion as to affidavit).

---

[3] Nor does F.S. argue on appeal she revoked her affidavit.

Accordingly, F.S.'s sole point of error is overruled.

**LEGAL AND FACTUAL SUFFICIENCY OF THE EVIDENCE TO SUPPORT THE TRIAL COURT'S ORDER TERMINATING A.H.'S PARENTAL RIGHTS TO C.A.H.**

A.H. argues the evidence is legally and factually insufficient to establish termination of his parental rights was in C.A.H.'s best interest.

## A. Standard of Review

A parent-child relationship may be terminated, pursuant to Texas Family Code section 161.001, only if the trial court finds by clear and convincing evidence one predicate ground enumerated in subsection (b)(1) and termination is in a child's best interest. TEX. FAM. CODE § 161.001(b). Clear and convincing evidence requires proof that will produce in the factfinder's mind "a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007. To determine if this heightened burden of proof is met, we employ a heightened standard of review by judging whether a "factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). This heightened standard "guards the constitutional interests implicated by termination, while retaining the deference an appellate court must have for the factfinder's role." *In re O.N.H.*, 401 S.W.3d 681, 683 (Tex. App.—San Antonio 2013, no pet.). Under this standard, the factfinder is the sole judge of evidentiary weight and credibility, including witness testimony. *In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009). We do not reweigh witness credibility issues, and we "defer to the [factfinder's] determinations, at least so long as those determinations are not themselves unreasonable.'" *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (quoting *Sw. Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 625 (Tex. 2004)).

"When reviewing the sufficiency of the evidence, we apply the well-established [legal and factual sufficiency] standards." *In re J.M.G.*, 608 S.W.3d 51, 53 (Tex. App.—San Antonio 2020,

pet. denied) (alteration in original) (quoting *In re B.T.K.*, No. 04-19-00587-CV, 2020 WL 908022, at *2 (Tex. App.—San Antonio Feb. 26, 2020, no pet.) (mem. op.)). In our legal sufficiency review, we must "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We must assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, and we do not disregard undisputed evidence even if it does not support the trial court's finding. *Id.* In our factual sufficiency review, we consider the entire record and determine whether, in light of the entire record, any disputed evidence "is so significant that a factfinder could not reasonably have formed a firm belief or conviction" on the challenged finding. *Id.*

**B. C.A.H.'s Best Interest**

**1. Law**

To terminate parental rights, a trial court must find by clear and convincing evidence termination is in the child's best interest. TEX. FAM. CODE § 161.001(b)(2). Under Texas law, there is a strong presumption the best interest of a child is served by keeping the child with a parent. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). However, a trial court must also presume "the prompt and permanent placement of the child in a safe environment is . . . in the child's best interest." TEX. FAM. CODE § 263.307(a). In making a best-interest determination, the factfinder looks at the entire record and considers all relevant circumstances. *See C.H.*, 89 S.W.3d at 27–29.

In determining a child's best interest, a trial court should consider the factors set out in Texas Family Code section 263.307 and the non-exhaustive *Holley* factors.[4] *See Holley v. Adams*,

---

[4] Section 263.307(b)'s factors include: the child's age and physical and mental vulnerabilities; the frequency and nature of out-of-home placements; the magnitude, frequency, and circumstances of the harm to the child; whether the child has been the victim of repeated harm after intervention by the department; whether the child is fearful of returning to

544 S.W.2d 367, 371–72 (Tex. 1976). Those factors include: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) the present and future physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the child's best interest; (6) the plans held by the individuals seeking custody; (7) the stability of the home of the parent and the individuals seeking custody; (8) the parent's acts or omissions indicating the existing parent-child relationship is not proper; and (9) any parental excuse for the acts or omissions. *Id.* The Department does not have to prove every factor for a trial court to find termination is in the child's best interest. *C.H.*, 89 S.W.3d at 27.

In our review of the trial court's best-interest findings, we must consider "the totality of the circumstances in light of the *Holley* factors" to determine whether sufficient evidence supports the challenged finding. *In re B.F.*, No. 02-07-334-CV, 2008 WL 902790, at *11 (Tex. App.—Fort Worth Apr. 3, 2008, no pet.) (mem. op.).

### 2. Analysis

#### a. The Desires of the Children

When children are too young to express their desires like one-year-old C.A.H., the factfinder may consider whether the child has bonded with caregivers, is well-cared for by them, and has spent minimal time with a parent. *See In re N.J.D.*, No. 14-17-00711-CV, 2018 WL 650450, at *6 (Tex. App.—Houston [14th Dist.] Feb. 1, 2018, pet. denied) (mem. op.). Deborah

---

the child's home; the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; whether there is a history of abusive conduct by the child's family or others who have access to the child's home; whether there is a history of substance abuse by the child's family or others who have access to the child's home; the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; whether the child's family demonstrates adequate parenting skills; and whether an adequate social support system consisting of an extended family and friends is available to the child. *See* TEX. FAM. CODE § 263.307(b).

Davis, a Department caseworker, testified A.H. was given an opportunity to develop a relationship with C.A.H. through weekly, hourlong, parent-child visitations. A.H. attended nineteen of seventy-three visits, and during the nineteen visits, he did not attend the entire time and sometimes arrived late. She further testified A.H. did not act inappropriately during the visits, but he did not appear very comfortable with C.A.H.

As to potential placements for C.A.H., Davis testified she did not receive information on paternal relatives, and the children's maternal relatives struggled with substance abuse. However, in between trial days, F.S.'s second cousin from Oklahoma contacted Davis, indicating her interest in adopting the children. Thereafter, the Department commenced the process of conducting a home study for the cousin to determine whether she would be a suitable placement. In the alternative, the Department planned for adoption by the children's nonrelatives in their current foster-to-adopt home—where the children had been living for approximately one month. Davis testified the home was safe and appropriate for the children, and they were thriving and maintaining their close bond. The foster couple were parents to two other biological children and one foster child, and the couple had met C.A.H. and his brother at foster-agency sponsored picnics. The home had no domestic violence or drug abuse, and the children's therapeutic needs were being met. Specifically, C.A.H. was tested for developmental delays, and his primary care physician wanted him tested for autism. In response to what he thought was in C.A.H.'s best interest, A.H. testified he thought C.A.H. and his brother should be placed with family that would qualify as meeting the standard of care for the children, like the cousin from Oklahoma.

### b. The Physical and Emotional Danger to C.A.H.

C.A.H. came into the Department's care after testing positive at birth for methamphetamines.[5] At the beginning of the case, A.H. did not openly admit to substance abuse, but Davis testified A.H. had been ordered to participate in/attend an inpatient substance abuse treatment facility. In April 2023—approximately fourteen months after C.A.H. was born and immediately removed by the Department—A.H. was released. Davis further testified A.H.'s substance abuse, criminal record relating to possession, and engagement in domestic violence made it unsafe for him to care for C.A.H. She testified A.H. remained on probation for possession of a controlled substance at the time of trial. She further testified the Department scheduled A.H. for three drug tests after his release from the treatment facility, but he did not attend the testing appointments; A.H. admitted this during his testimony. Davis testified A.H. said he did not submit to the drug testing because he had relapsed with methamphetamines. She testified the Department wanted to schedule A.H. for a substance abuse evaluation, but A.H. had not contacted the Department to schedule the evaluation. Davis also testified A.H. refused a drug test between trial days, and A.H. confirmed this, testifying he was clean, and the drug test was pointless. She noted, however, he was currently participating in drug counseling through probation. Davis further testified M.R.S.—who was F.S.'s child but not A.H.'s biological child—identified A.H. as a source of some of the trauma for which he was receiving individual therapy. She testified M.R.S. witnessed domestic violence and drug use between A.H. and F.S. F.S. at first denied domestic violence between her and A.H. occurred, but she later conceded the police were called a few times for arguments during her pregnancy and there had been some domestic violence. Davis testified she believed it was in C.A.H.'s best interest the trial court terminate A.H.'s parental rights.

---

[5] F.S. also admitted to using marijuana during her pregnancy.

Jennifer O'Malley, a former legal caseworker on the case, testified she was concerned about F.S. and the children being around A.H. because of the domestic violence and substance abuse between F.S. and A.H. in the past. F.S. told her they were no longer together and only interacted with one another as the children's parents. However, O'Malley testified A.H. and F.S. maintained a relationship after he was released from the treatment facility.[6] During this time, F.S. also struggled to complete services, including drug testing, and has twice relapsed after having received drug treatment. F.S. disputed this, claiming she only relapsed once, two months before trial.

### c. The Programs Available to Assist A.H. in Promoting C.A.H.'s Best Interest

Davis testified the Department created a service plan for A.H. But A.H. did not complete his domestic violence course, individual counseling, or drug testing. O'Malley testified she spoke to A.H. while he was housed at the treatment facility and advised him services were available upon his April 2023 release. O'Malley further testified A.H. did not enroll in services while he was receiving inpatient treatment. Davis testified A.H. told her he did not complete the plan's services because he had trouble securing transportation. She further testified he acknowledged he attended some services by using the bus system. Davis also testified that for some incomplete services, A.H. would not have been required to travel at all because videoconference was an option. She further testified he completed his psychological assessment and completed his parenting course the day of trial; he was also attending a domestic violence course. Davis testified the Department informed A.H. he would receive credit for completing services while he was in a treatment facility; he attended an anger management course while housed in the treatment facility, but Davis could not

---

[6] Davis similarly testified she witnessed them together once at a drug testing facility. F.S. disputed they were in a relationship and explained it was coincidence they were at the drug testing facility together, but conceded they were in her car together.

recall whether he completed that course. A.H. testified he was one week from completing his domestic violence and parenting courses and conceded he missed several parenting and domestic violence classes due to forgetfulness and other responsibilities like taking his nephew to football practice.

### d. Summary

Here, based on this evidence, we conclude the trial court could have reasonably formed a firm belief or conviction termination of A.H.'s parental rights was in C.A.H.'s best interest. *See J.F.C.*, 96 S.W.3d at 266. Specifically, the trial court could have reasonably formed a firm belief or conviction C.A.H. and his brother were well-cared for in their new foster home, F.S.'s Oklahoman cousin or the new foster home represented credible, long-term adoption options for the children, and A.H. approved adoption by the cousin. *See N.J.D.*, 2018 WL 650450, at *6. The trial court could have also reasonably formed a firm belief or conviction A.H. chose to spend minimal time with C.A.H. because he missed most of his visits, and C.A.H.'s long-term developmental challenges would be better managed by his current caregivers. The trial court could have also reasonably formed a firm belief or conviction A.H. was emotionally and physically dangerous to C.A.H. because of his substance abuse history. Finally, the trial court could have reasonably formed a firm belief or conviction A.H. did not make a serious effort to complete his services in his family service plan.

We further conclude any disputed evidence, when viewed considering the entire record, could have been reconciled in favor of the trial court's best-interest finding and was not so significant the trial court could not have reasonably formed a firm belief or conviction termination was in the children's best interest. *See id.* We therefore hold the evidence is legally and factually sufficient to support the trial court's best-interest finding. *See* TEX. FAM. CODE § 161.001(b)(2).

## C. Termination on Subsection (O) Grounds

A.H. argues he complied with the family service plan's material provisions, and the evidence was insufficient to support termination by clear and convincing evidence based on subsection (O). However, "[o]nly one termination ground—in addition to a best interest finding—is necessary to affirm a termination judgment on appeal." *In re F.B.C.L.*, No. 04-20-00477-CV, 2021 WL 1649221, at *1 (Tex. App.—San Antonio Apr. 28, 2021, no pet.) (mem. op.). Here, the trial court found subsection (O) was met in addition to subsection (P). Tex. Fam. Code § 161.001(b)(1)(O), (P).

"When, as here, an appellant does not challenge an independent ground that supports the judgment and termination was in the child's best interest, this court may not address either the challenged grounds or the unchallenged ground for termination." *Id.* Because A.H. does not challenge the trial court's termination order on Subsection (P), we accept the unchallenged ground's validity and must affirm the termination order on that basis without examining evidentiary sufficiency of the subsection (O) ground. *See id*.

Accordingly, we overrule A.H.'s challenge to the termination order's finding under subsection (O).

## CONCLUSION

We affirm the trial court's order.

Luz Elena D. Chapa, Justice